UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIA LUCAS, <br><br>                     Plaintiff, <br><br>       v. <br><br> ISABELLA GUZMAN, <br> *Administrator,* <br> *U.S. Small Business* <br> *Administration (SBA),* <br><br>                 Defendant. | Civil Action No. 21-0296 (ABJ) |

**MEMORANDUM OPINION & ORDER**

On February 1, 2021, plaintiff Nia Lucas brought this action against Isabella Guzman, the Administrator of the United States Small Business Administration ("SBA") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.* Compl. at 1.[1] The complaint, which arises out of plaintiff's employment at the SBA and her work during the January 2018 federal government shutdown, consists of two counts. Plaintiff alleges that defendant violated the FLSA by: (1) "intentionally refus[ing] to pay [plaintiff] her wages," and (2) disciplining and terminating her in retaliation for asking when she would be paid, which she characterizes as protected activity. Compl. ¶¶ 18, 23–29, 30–35. Plaintiff seeks declaratory and monetary relief. Compl. at 8.

On July 23, 2021, defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Def.'s Mot. to Dismiss or, in the Alt., for Summ. J. [Dkt. # 12] (SEALED), Mem.

---

1     As of July 23, 2021, current SBA Administrator Isabella Casillas Guzman was automatically substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

of Law in Supp. [Dkt. # 12-1] ("Def.'s Mot.").  Defendant argues first that both counts in the complaint should be dismissed with prejudice pursuant to Rule 12(b)(6), or in the alternative, that the Court should enter judgment in defendant's favor under Rule 56, *id.* at 2, because the counts "are based on events that occurred in January 2018," and plaintiff expressly released all existing claims against the SBA when she executed a Settlement and Release Agreement in March 2020. *Id.* at 5.  Second, defendant argues that the second count of the complaint alleging retaliation should be dismissed pursuant to Rule 12(b)(6), or alternatively pursuant to Rule 56, because "her allegations do not establish that she engaged in protected activity," and her allegations are "factually inaccurate."  *Id.* at 9, 11.  The motion is fully briefed.[2]

For the reasons to be set forth below, defendant's motion will be **GRANTED in part** and **DENIED in part**:  defendant's motion to dismiss or for summary judgment on Count I will be **DENIED**, but defendant's motion to dismiss Count II will be **GRANTED**.

---

2       *See* Pl.'s Opp. to Def.'s Mot. [Dkt. # 13] ("Pl.'s Opp."); Def.'s Reply in Further Supp. of Def.'s Mot. [Dkt. # 15] (SEALED) ("Def.'s Reply"); Surreply to Def.'s Reply [Dkt. # 17] ("Pl.'s Surreply").

## FACTUAL BACKGROUND[3]

Nia Lucas was employed as a Program Analyst in the Office of Women's Business Ownership within the SBA from 2017 until 2020. *See* Settlement and Release Agreement, Ex. A to Decl. of Beverley Hazlewood ("Hazlewood Decl. I"), Def.'s Mot. ("Agreement") at 2 (agreement from 2020 acknowledging employment as of 2017); Notice of Proposed Removal, Ex. B to Hazlewood Decl. I at 1 (noting position and acknowledging employment as of December 2017); *see also* Compl. ¶¶ 1, 6–7.

On January 22, 2018, during the federal government shutdown, plaintiff worked from home for six hours. *See* Email from SBA to Nia Lucas (Jan. 21, 2018), Ex. 1 to Pl.'s Surreply; Email from Nia Lucas to Eric Fuller (Feb. 9, 2018), Ex. 13 to Pl.'s Surreply; Email from Nia Lucas to Bruce Purdy (Feb. 9, 2018), Ex. 14 to Pl.'s Surreply (collectively "February 2018 Emails"); *see also* Compl. ¶ 13. That same day, Congress passed legislation restoring appropriations, directing federal civilian employees to return to duty, and providing retroactive compensation for all furloughed federal employees for the period of the lapse in appropriations. *See* Mem. from

---

3       Pursuant to Local Civil Rule 7(h)(1), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Defendant submitted a statement of material facts – as to which defendant contends there is no genuine issue – in support of the alternative motion for summary judgment. *See* Def.'s Mot., Def.'s Statement of Undisputed Material Facts [Dkt. # 12-3] (SEALED) ("Def.'s SOF") ¶¶ 1–13. Plaintiff filed a response, but did not include the statement identifying contested facts called for by the Local Rules. *See* Pl.'s Opp.; *see* LCvR 7(h)(1) ("An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement.").

Kathleen M. McGettigan, Acting Dir., U.S. Off. of Pers. Mgmt. to Chief Hum. Cap. Officers (Jan. 24, 2018), Ex. 6 to Pl.'s Surreply ("McGettigan Mem.") at 21[4]; *see also* Compl. ¶ 16.

The next week, on January 31, 2018, plaintiff submitted a grievance through her union, # 1-31-2018-1.  SBA/AFGE (American Federation of Government Employees) Grievance Form, Ex. 2 to Suppl. Decl. of Beverley Hazlewood ("Hazlewood Decl. II") [Dkt. # 15-1] (SEALED) ("January 2018 Grievance") (acting union official named as "Johnnie Green"); *see also* Def.'s SOF ¶ 1.  In the form, she complained about the conduct of her supervisor, Bruce Purdy, from the period of January 16, 2018 through the date of the filing of the grievance:

> From January 16, 2018 and continuing today Mr. Purdy denied Ms. Lucas her with-in grade increase.  From January 19, 2018 and continuing until today Mr. Purdy excessively monitors Ms. Lucas, she is made to clock in and out throughout the day with a team lead and Mr. Purdy forces contact with her at least twice a day which is not work related, Ms. Lucas has repeatedly asked him to stop.  This is unlawful and similarly situated employees are not treated the same[].  During this time frame Mr. Purdy has threatened her with personnel action if he is unable to monitor her via Microsoft Lync while she is on reasonable accommodations . . . Mr. Purdy demands that Ms. Lucas deliver to him unfettered access to her medical diagnosis and . . . provided Ms. Lucas' co-worker(s) access to her medical documents . . . . [H]e denied Ms. Lucas training directly related to her work in SBA, training which he has approved for similarly situated employees.  Also . . . Mr. Purdy has denied Ms. Lucas access to her Official Personnel Folder . . . and all other records in his possession.  Additionally, [f]rom January 16, 2018 Mr. Purdy has against the law has [sic] denied all official time in the month of January and ongoing for Ms. Lucas to have official time to amend and confer with counsel on the outstanding EEO complaint against him.

January 2018 Grievance at 1.  The relief she sought included, among other things, "that Ms. Lucas . . . BE MADE WHOLE," "that Ms. Lucas . . . retroactively receive her Wage Grade Increase," "Back pay, TSP [thrift savings plan] contributions, all with Interest," and "Medical Hardship

---

4       Because the exhibits to the surreply were not docketed separately, page citations are to the PDF page number appearing at the top of the filing as docketed at Dkt. # 17-1.

Relief." *Id.*  In response to the question on the form asking what contractual or legal provisions had been violated, plaintiff listed thirty-eight separate provisions, including twenty-two different articles of the 2017 Master Labor Agreement, the SBA policy against sexual harassment, HIPAA (Health Insurance Portability and Accountability Act), and "FLSA Violation." *Id.* at 2.

On February 2, 2018, plaintiff emailed Denise Edmonds, an SBA Office Automation Assistant and Timekeeper,[5] inquiring about payment for the work she performed on January 22, 2018.  *See* February 2018 Emails at 71; *see also* Compl. ¶ 18.  On February 6, 2018, Edmonds informed plaintiff that she would be paid "for 4 hrs only."  February 2018 Emails at 68.  Edmonds included Purdy on the email chain to confirm the accuracy of her response, and on February 6, 2018, he stated:  "[d]uring the furlough, employees were only allowed to work on shut down activities.  In conferring with HR, 4 hours is what is considered reasonable for the shut down activities." *Id.* at 66; *see also* Compl. ¶ 19.

On February 9, 2018, Lucas sent an email with the subject line "Manipulation of Time Sheet and Forced Overtime" to a number of individuals, including to her union representative Johnnie Green,[6] stating:

> I would like the grievance to include *manipulation of timesheet* and *forced overtime without compensation on 1/22/[2018]*.  I worked 6 hours, and Bruce and Denise Edmonds colluded to change the time that I actually entered which was 6 hours (6am to 12 noon).  They changed it to 4 hours saying this is reasonable versus making me whole as furlough guidance states.

---

5       Letter from SBA to Nia Lucas (May 8, 2018), Ex. 15 to Pl.'s Surreply at 75 (reflecting Edmonds' title).

6       Nia Lucas Aff. (Sept. 17, 2021), Pl.'s Surreply ("Nia Lucas Aff.") ¶ 18 (reflecting Green's role).

Email from Nia Lucas to Eric Fuller (Feb. 9, 2018), Ex. 13 to Pl.'s Surreply at 62 (emphasis in original).[7]   She avers in opposition to the motion for summary judgment that at that time, she amended her January 2018 grievance "to *include* FLSA claims," and that this amended grievance was designated as, "1-31-2018-1: Addendum 2-14-[]2018." Nia Lucas Aff. ¶ 24 (emphasis added) (stating she amended grievance "[i]n February 2018").  The amended grievance is not included in the record.[8]

Three months later, on May 18, 2018, Purdy sent plaintiff official notice that he was proposing to remove her from her position.  Letter from Bruce Purdy to Nia Lucas (May 18, 2018), Ex. B to Hazlewood Decl. I ("May 18, 2018 Letter") at 1.  He included two charges in the letter: (1) "Threatening Your Supervisor With Legal Action," and (2) "Lack of Professional Conduct," which involved "eight instances of unprofessional conduct."  *Id.*  This notice did not mention the

---

[7]     Although employees in the union had the right to be represented by AFGE during grievance discussions, they were also permitted to "present a grievance on the employee's own behalf, provided the Union is given the opportunity to be present during the processing of the grievance and at the adjustment of the grievance."  Master Lab. Agreement between SBA and AFGE Council 228 (Jan. 11, 2017), Ex. 1 to Hazlewood Decl. II.

[8]     Plaintiff also claims that she went through the grievance process, and "the arbitration was withdrawn by the union before relief was provided." Nia Lucas Aff. ¶ 24; *see also id.* ¶ 19 ("In May 2020, arbitrator Felicia Busto sent me email communications that the Local via Green and SBA agree to withdraw pending arbitration for Individual Grievance # 1-31-2018-1: *Addendum 2-14-201*[*8*] . . . .") (emphasis in original), citing Email from Johnnie Green to Kenneth Bledsoe & Felice Busto (June 2, 2020), Ex. 10 to Pl.'s Surreply ("Email re: Am. Grievance"). There are some emails contained in Exhibit 10 to the surreply that indicate that the SBA and the union representative were in agreement that the arbitration had been "closed," but the reasons are not included in Exhibit 10; there are only emails that say "this arbitration was closed pursuant to the attached exchanges," which are not attached.  Email re: Am. Grievance, Ex. 10 to Pl.'s Surreply at 46.

hours plaintiff worked during the January 2018 furlough.  Def.'s SOF ¶ 11; *see* May 18, 2018

Letter. [9]

Plaintiff filed another grievance, #2-25-2019-MA, with the assistance of her union, on

February 25, 2019.  SBA/AFGE Grievance Form, Ex. 3 to Hazlewood Decl. II ("February 2019

Grievance") (union representative listed as Johnnie Green); *see also* Def.'s SOF ¶ 1.  The grievance

pertained to "Pay period 2 of 2019 and Ongoing," and plaintiff complained of "Failure to provide

---

[9]      Purdy initially sent plaintiff official notice that he was proposing to remove her from her
position on May 8, 2018.  *See* Letter from SBA to Nia Lucas (May 8, 2018), Ex. 15 to Pl.'s Surreply
("May 8, 2018 Letter").  That letter included at least four charges, although only three are described
in the excerpt provided to the Court:  "Threatening Your Supervisor With Legal Action," "Lack
of Professional Conduct," and "Lack of Candor."  *Id.* at 74–75.  Purdy wrote that plaintiff told him
she was "powering down [her] laptop at noon" on January 22, 2018, but that "a review of [her]
SBA e-mail/computer system revealed login activity in connection with [her] user ID and user
name on Monday, January 22, 2018 from at least 12:09 p.m. to 4:55 p.m."  *Id.*  Purdy also noted
that "a review of [plaintiff's] SBA email/computer system revealed activity on Monday,
January 22, 2018 starting at 8:14 a.m. and not at 6:00 a.m.," and "[t]herefore, [plaintiff's] claim
that [she] worked six hours of overtime lacks candor."  *Id.*

Further, although charge three is not visible in the excerpt of the letter provided to the
Court, the last paragraph of the charge is visible and reads:

> You were designated as a non-excepted employee who was furloughed
> during the government shutdown that occurred at midnight (12:00 am) on
> Saturday, January 20, 2018, and ended on Monday evening
> January 22, 2018.  You were directed not to use SBA computer resources
> beginning at noon on Monday, January 22, 2018 while you were on
> furlough status during the government shutdown.  You were directed to
> report back to work on January 23, 2018, after the continuing resolution
> passed and you were notified that the furlough was cancelled.  (Exhibit 6)
> A review of your SBA email/computer system revealed login activity in
> connection with your user ID and user name on Monday, January 22, 2018
> from at least 12:09 p.m. to 4:55 p.m. while you were on furlough status.
> (Exhibit 14).  Therefore, you failed to follow the Agency directive not to
> use SBA resources during the government shutdown.

*Id.*  The May 8, 2018 notice was rescinded on May 18, 2018, and plaintiff was directed to "continue
on an administrative leave status."  Letter from Bruce Purdy to Nia Lucas (May 18, 2018), Ex. C
to Hazlewood Decl. I.

WGI" and "violation of time accounting and telework sections and articles."  February 2019

Grievance at 1.  The multiple forms of relief sought again included "TO BE MADE WHOLE," a

retroactive Wage Grade increase, and "Back pay, TSP contributions, all with Interest."  *Id.*  She

again included a lengthy, single-spaced list of thirty-eight contractual provisions and other rules

and regulations that were allegedly violated, including the FLSA.  *Id.* at 1–2.

In March 2020, plaintiff and the SBA entered into a Settlement and Release Agreement.

*See* Agreement (effective as of March 9, 2020); Def.'s SOF ¶ 3.  Plaintiff was represented by an

attorney named Tamara L. Miller, who also signed the Agreement.  Agreement at 10.  Pursuant to

the Agreement, plaintiff agreed to:

> withdraw, with prejudice, any and all existing actions against the Agency
> that she may have pending before the Agency, the Merit Systems Protection
> Board, the Equal Employment Opportunity Commission, the Office of
> Special Counsel, or any other administrative or judicial forum, and any
> grievances she may currently be pursuing against the Agency or any legacy
> component, therein, whatsoever, that she may have pending against the
> Agency at the time she signs this Settlement Agreement, including, but not
> limited to . . . SBA Union Grievance 1-31-2018-1, and any associated
> arbitration [and] SBA Union Grievance 228-2-25-2019-MA-1, and any
> associated arbitration . . . .

*Id.* ¶ 6; *see also* Def.'s SOF ¶ 4.  The Agreement also contains a release clause:

> Upon the Effective Date of the Agreement, Complainant shall and hereby
> does settle, release, hold harmless, and forever discharge the SBA and its
> officials, employees, officers, agents, and representatives from all claims
> contained within any of the matters or forums identified in Paragraph 6 and
> its subparagraphs, as well as any and all other claims, demands, rights or
> causes of action, however designated, and all other claims and liabilities
> whatsoever, whether known or unknown, pending or not now pending,
> contingent or fixed, that Complainant has had, now has or hereafter may
> have against the SBA and its officials, employees, officers, agents, and
> representatives as of the date of this Agreement.

Agreement ¶ 11; *see also* Def.'s SOF ¶ 6.  The SBA agreed to:



1.

2.

3.

4.

5.

6.

In her affidavit, plaintiff avers that the Agreement "did not involve the settlement of any claims for unpaid wages under the Fair Labor Standards Act" and that she "never agreed to settle any claims under the FLSA with the SBA." Nia Lucas Aff. ¶ 28. She adds that her lawyer did not practice FLSA law. *Id.* ¶ 14. Moreover, she states that while she "did sign an EEOC settlement with SBA, . . . the union was not []part of the settlement." *Id.* ¶ 22; *see also* Agreement at 10–11.

### LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

In ruling upon a motion to dismiss for failure to state a claim, a court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), aff'd, 38 F. App'x 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for

summary judgment."), citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).[10]

In this case, the parties have submitted declarations and other exhibits in support of, and in opposition to, the pending motions. *See* Hazlewood Decl. I with Exs. A–C; Nia Lucas Aff.; Hazlewood Decl. II with Exs. 1–3; Exs. 1–15 to Pl.'s Surreply. Some of these materials were specifically referenced in the complaint and may be considered in connection with a Rule 12(b)(6) motion, including: Congress's continuing resolution requiring federal government employees who were furloughed as a result of the January 2018 appropriations lapse to be compensated, *see* Compl. ¶ 16 referring to S. Con. Res. 33, 115th Cong. (2018), Ex. 3 to Pl.'s Surreply; a memorandum from the United States Office of Personnel Management providing guidance on the effect of the continuing resolution, *see* Compl. ¶ 17 & Ex. A to Compl. referring to and attaching McGettigan Mem.; the February 6, 2018 email informing plaintiff that she would be paid for four hours of overtime, *see* Compl. ¶ 19, referring to February 2018 Emails at 2; and the May 8, 2018 letter proposing to remove plaintiff from her position, *see* Compl. ¶¶ 20–21 citing May 8, 2018 Letter. *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624. But since the Court will also consider the declaration attached to defendant's motion to dismiss, the affidavit attached to plaintiff's surreply, the Settlement and Release Agreement, plaintiff's grievance forms, and the emails between the parties in its consideration of Count I, the Court will address the Count under

---

10      Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider [her] filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Although plaintiff is now proceeding *pro se*, she was represented by counsel when she filed her complaint and her opposition to defendant's motion. *See* Compl. at 8; Pl.'s Opp. at 8; *but see* Pl.'s Surreply (filed by plaintiff).

Rule 56 in accordance with defendant's motion in the alternative.  Plaintiff had a full opportunity to oppose the motion, and she submitted an opposition with an affidavit and a surreply with fifteen exhibits of her own.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  If, however, "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may:  (1) defer considering or deny a motion for summary judgment; (2) "allow time to obtain affidavits or declarations or to take discovery"; or (3) "issue any other appropriate order."  Fed. R. Civ. P. 56(d).

The mere existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"

*Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

### I.   Count I

The FLSA was enacted to "protect certain groups of the population from substandard wages and excessive hours" due to the "unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To accomplish that goal, Congress set certain standards for minimum wages and maximum hours, which cannot be "waived by any employee subject to the Act." *Id.* Rather, "the FLSA's provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement." *Sarceno v. Choi*, 66 F. Supp. 3d 157, 167 (D.D.C. 2014); *see D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946) ("We think the purpose of the [FLSA] . . . leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise [o]f controversies over coverage."); *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."). The "typical tenets of contract law do not apply to FLSA settlements." *Sarceno*, 66 F. Supp. 3d at 167.

Although the D.C. Circuit has not spoken on the issue, the Eleventh Circuit has held that there are two exceptions to this general rule. It ruled that compromises of FLSA back wage or liquidated damage claims may be permitted in a Department of Labor supervised settlement or in "a stipulated judgment entered by a court which has determined that a settlement . . . is a fair and

reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1355[11]; *see also Gangi*, 328 U.S. at 113 n.8 ("[W]here settlements are proposed in controversies between employers and employees over violations of the Act, by the simple device of filing suits and entering agreed judgments, we think the requirement of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties.").

Other courts in this district have adopted the Eleventh Circuit's holding. *See Sarceno*, 66 F. Supp. 3d at 170; *Beard v. District of Columbia Hous. Auth.*, 584 F. Supp. 2d 139, 142 n.2 (D.D.C. 2008). In *Sarceno*, the court went on to opine, though, that "a private settlement of FLSA claims may be enforceable, even if the settlement was reached without United States Department of Labor or judicial supervision or approval, but only when the agreement resolves a bona fide dispute between the parties and the terms of the settlement are fair and reasonable." *Sarceno*, 66 F. Supp. 3d at 170; *see also Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 256, 256 n.10 (5th Cir. 2012). The court in *Sarceno* explained that if a court determines that a bona fide dispute exists – a "critical legal conclusion," *Sarceno*, 66 F. Supp. 3d at 170 – it must then consider the "totality of the circumstances surrounding the execution of the Settlement Agreements" by examining "three primary aspects of the agreements to evaluate their fairness and reasonableness: (1) whether the employer is overreaching to secure a waiver of rights; (2) whether the settlement was reached by arms' length negotiation; and (3) whether the plaintiffs would have difficulty

---

11    Defendant cites *Lynn's Food Stores* as the "leading Court of Appeals case." Def.'s Reply at 3. Plaintiff also cites to *Lynn's Food Stores* as an example of "employer overreaching." Pl.'s Surreply at 12.

obtaining a judgment." *Sarceno*, 66 F. Supp. 3d at 172 (internal quotation marks omitted); *see also Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132 (D.D.C. 2014).

The Federal Circuit has also carved out an exception to the general rule against settling FLSA claims in the context of federal labor disputes.  In *O'Connor v. United States*, a settlement agreement was negotiated on behalf of federal employees who were represented by a union in an administrative grievance procedure that was mandated by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7121(a)(1).  308 F.3d 1233, 1236–37 (Fed. Cir. 2002).  The Federal Circuit held that although private sector employees are unable to waive or release their rights to back wage compensation and liquidated damages under the FLSA, federal employees who "pursuant to the CSRA, [are] represented exclusively by a union and subject to a CBA [collect bargaining agreement], may legitimately relinquish [their] FLSA rights as part of an accord and satisfaction." *Id.* at 1242.  The court noted:

> [T]he policy concerns driving the court's decision in *Lynn's Food Stores* are not present in the context of a settlement agreement negotiated pursuant to the CSRA and a CBA.  To the contrary, the CSRA encourages federal employees to participate in labor unions in order to avoid exactly the sort of unjust arrangements experienced by Lynn's Food's employees by attaining an equal bargaining position vis-à-vis their employers.

*Id.* at 1244.  The court also explained that a "valid accord and satisfaction requires four elements: (1) proper subject matter; (2) competent parties; (3) a meeting of the minds of the parties; and (4) consideration."  *Id.* at 1240; *see also Beard*, 584 F. Supp. 2d at 140, 143 n.3 (holding that an accord and satisfaction cannot extinguish FLSA claims, but distinguishing case from *O'Connor* because the plaintiff in *Beard* was not a federal agency employee or a member of a union that was negotiating for its members).

15

Defendant has moved to dismiss plaintiff's FLSA claim on the grounds that in March 2020, plaintiff, "who was represented by counsel, signed a Settlement and Release Agreement in which she agreed to dismiss all her existing claims, actions, and grievance[s] against the Agency and its officials." Def.'s Mot. at 1. Plaintiff disputes defendant's assertion that the Agreement covered her FLSA claim. Pl.'s Opp. at 5; Pl.'s Surreply at 3–4, 11. She also maintains that FLSA claims cannot be waived, Pl.'s Opp. at 4–5, and that this case does not fall within the *O'Connor* exception to that principle for federal employees covered by collective bargaining agreements. Pl.'s Surreply at 3–4.

As a threshold matter, and as stated above, the Court will treat the motion as to Count I as a motion for summary judgment since it is necessary to consider documents outside of the complaint, including the Settlement and Release Agreement, the grievance forms, and plaintiff's affidavit. The Agreement reads: "Complainant agrees to withdraw, with prejudice, any and all existing actions against the Agency that she may have pending . . . at the time she signs this Settlement Agreement, including but not limited to: . . . SBA Union Grievance 1-31-2018-1, and any associated arbitration; [and] SBA Union Grievance 228-2-25-2019-MA-1." Agreement ¶ 6. Neither of these two grievances, however, relate to plaintiff's FLSA claim for unpaid overtime.

The first grievance, #1-31-2018-1, concerned allegedly inappropriate workplace conduct on the part of plaintiff's supervisor, January 2018 Grievance at 1, and was filed *before* plaintiff was informed that she would be paid for only four hours of work during the furlough period. *See* February 2018 Emails at 68. To the extent that the January 2018 grievance mentions the FLSA at all, it is only as part of the laundry list of all statutes that were potentially implicated. January 2018 Grievance at 2. The second grievance, 228-2-25-2019-MA-1, also does not make any allegations about pay in 2018. Rather, it specifies that the "[d]ate and [t]ime [the] incident occurred that gives

rise to the grievance" was the "[p]ay period 2 of 2019 and [o]ngoing."  February 2019 Grievance at 1.  So neither of these records supports the defendant's assertion that there was an "existing" action, a "pending" grievance, or a grievance plaintiff was "currently . . . pursuing" related to the FLSA at the time the Agreement was executed.  *See* Agreement ¶ 6.

Although plaintiff asserts that she amended her January 2018 grievance in February 2018 to include FLSA claims, *see* Nia Lucas Aff. ¶ 24 (numbered "1-31-2018-1 Addendum 2-14-2018"), she also claims that when she went through the grievance process, "the arbitration was withdrawn by the union before relief was provided."  *Id.* ¶ 24; *see also id.* ¶ 19 ("In May 2020, arbitrator Felicia Busto sent me email communications that the Local via Green and SBA agree to withdraw pending arbitration for Individual Grievance # 1-31-2018-1: *Addendum 2-14-2021*, in January 2020 several months before the March 2020 EEOC settlement . . . .") (emphasis in original); Email re: Am. Grievance at 46 ("This arbitration was closed pursuant to the attached exchanges on January 22, 2020.").  Therefore, there is nothing in the record to establish that the amended grievance was "existing" or "pending" at the time the Agreement was signed.

But even if the Agreement could be interpreted to cover the amended grievance, or if one were to apply the extremely broad language purporting to release the defendant from, *inter alia*, "all other claims and liabilities whatsoever, whether known or unknown, pending or not now pending, contingent or fixed, that Complainant has had, now has or hereafter may have against the SBA and its officials, employees, officers, agents, and representatives as of the date of this Agreement," Agreement ¶ 11, the *O'Connor* exception to the general principle that FLSA claims cannot be waived would not apply.  Plaintiff was represented by private counsel, and not the union, during the negotiation and execution of the Agreement.  *See* Agreement at 10.  Further, the

Agreement does not otherwise purport to resolve any FLSA issues or relinquish any FLSA rights. *See generally* Agreement.[12]

For these reasons, the Court finds that there is a material dispute of a genuine fact at this early juncture as to whether plaintiff dismissed her FLSA claims as part of the Agreement. Defendant's motion to dismiss, or in the alternative, for summary judgment on Count I will be denied.

## II.    Count II

The FLSA also makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" under its provisions.  29 U.S.C. § 215(a)(3).  "[C]ourts have looked to Title VII cases in interpreting the FLSA." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th  Cir.  2008); *see Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 54 n.9 (D.D.C. 2015), quoting *Cooke v. Rosenker*, 601 F. Supp. 2d 64, 73 (D.D.C. 2009).  To establish a prima facie case of retaliation under the FLSA, a plaintiff must show:  (1) that she engaged in a protected activity, (2) that she was subjected to an adverse action by her employer, and (3) that there is a causal link between the protected activity and the adverse employment action.  *Hicks v. Ass'n of Am. Med. Colls.*, 503 F. Supp. 2d 48, 51 (D.D.C. 2007) (FLSA); *see also Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003) (Title VII).  And unlike

---

12      This ruling expresses no opinion on the legal effect of the January 22, 2020 resolution of Individual Grievance # 1-31-2018-1 Addendum 2-14-2018, in which plaintiff had union representation.  *See* Nia Lucas Aff. ¶ 24; Email re: Am. Grievance.  The Court has not been provided with the amended grievance or any of the records related to the resolution of that grievance.  *See* Def.'s Mot.; Pl.'s Opp.; Def.'s Reply; Pl.'s Surreply.

in Count I, the Court need not consider documents outside the pleadings, so it will treat the motion as a motion to dismiss.

To state a claim for retaliation, a plaintiff must first allege that she engaged in protected activity by filing a complaint or instituting or causing to be instituted any proceeding under the FLSA's provisions. *See* 29 U.S.C. ¶ 215(a)(3). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011) (discussing retaliation in violation of the FLSA). The complaint must have "some degree of formality" that would provide an employer with "fair notice that a grievance has been lodged." *Id.* at 14.[13]

Defendant contends that plaintiff has not stated a *prima facie* claim for retaliation under the statute because the essential first element is absent: "[p]laintiff's isolated informal inquiry about when she would be paid does not constitute protected activity within the meaning of the Fair Labor Standards Act because it would not put a reasonable person on notice that she is asserting her rights under the statute." Def.'s Mot. at 11.

Plaintiff submits that "informal complaints of unpaid wages suffice" to qualify as protected activity, Pl.'s Opp. at 7, but she cites no authority in support of that proposition. Although "[a] plaintiff alleging retaliation faces a low hurdle at the motion to dismiss stage," *Winston v. Clough*,

---

13    For purposes of a Title VII retaliation claim, "no 'magic words' are required," but "the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). "Not every complaint garners its author protection under Title VII." *Id.* (noting that plaintiff's memorandum may not be protected activity since it did not allege that "she was currently being discriminated against or that she was being retaliated against for her previous lawsuit").

19

712 F. Supp. 2d 1, 11 (D.D.C. 2010), plaintiff has not alleged sufficient facts to give rise to a plausible inference that she engaged in protected activity.  Plaintiff alleges simply that she "asked SBA when she would be getting paid for her January 2018 wages," Compl. ¶ 18, but she does not assert that she filed a complaint or instituted any sort of proceeding under the FLSA's provisions. "Ask[ing]" when she would be paid, *id.*, is not "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the [FLSA]." *Kasten*, 563 U.S. at 14.

Therefore, defendant's motion to dismiss Count II of the complaint will be granted.

## CONCLUSION

Because the Court finds that there is a genuine dispute as to whether plaintiff released her claims against the agency in the Settlement Agreement, defendant's motion for summary judgment on Count I is hereby **DENIED**.  However, because plaintiff's allegations are insufficient to state a retaliation claim, defendant's motion to dismiss Count II is hereby **GRANTED**.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 23, 2022