## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Nia Shene' Lucas,

               Plaintiff,

      v.

Kelly Loeffler,
Administrator, Small Business
Administration,

           Defendant.

**No. 21-cv-0296**

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

David R. Dorey
D.C. Bar No. 1015586
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway
Suite 200
Annapolis, MD  21401
Email: ddorey@liffwalsh.com
Telephone: (410) 266-9500
Facsimile: (410) 266-7699

*Counsel for Plaintiff Nia Shene' Lucas*

**TABLE OF CONTENTS**

Table of Authorities.............................................................................................. i

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

BACKGROUND .......................................................................................................... 1

LEGAL STANDARD.................................................................................................... 6

ARGUMENT ................................................................................................................ 7

    A.   Lucas was an employee covered by the FLSA. .................................................. 7

    B.   Lucas's AWS/MaxiFlex schedule entitled her to overtime compensation for all hours in excess of eighty per pay period.................................................................. 8

    C.   Lucas worked overtime during the Furlough Period but was paid for only four out of nine overtime hours in violation of the FLSA.................................................. 9

    D.   SBA's failure to pay Lucas was a willful violation of the FLSA. .................... 12

CONCLUSION.............................................................................................................. 13

## TABLE OF AUTHORITIES

**CASES**

*Alaska v. EEOC*, 564 F.3d 1062 (9th Cir. 2009) ............................................................7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................6, 7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).............................................................6

*Doe v. United States*, 129 F.4th 1362 (Fed. Cir. 2025) .................................................7

*Hilbert v. District of Columbia*, 23 F.3d 429 (1994) ....................................................7

*Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .........................6

**STATUTES**

29 U.S.C. § 203.................................................................................................................7

29 U.S.C. § 207...............................................................................................................10

29 U.S.C. § 216...............................................................................................................13

29 U.S.C. §§ 201 *et seq.* .................................................................................................7

5 U.S.C. § 6121......................................................................................................2, 8, 9

5 U.S.C. § 6128......................................................................................................8, 10

**RULES**

Fed. R. Civ. P. 56 ............................................................................................................6

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Nia Lucas ("Lucas") is a former employee of the United States Small Business Administration ("SBA"). SBA refused to pay Lucas wages for hours of work she performed and for hours when she was furloughed during the January 2018 lapse in government funding (the "Furlough Period"), and further failed to do so at the required overtime rate in violation of the Fair Labor Standards Act ("FLSA"). SBA did this intentionally. It paid every other employee in Lucas's office for the full amount of the Furlough Period. But not her. Lucas filed this action against SBA to vindicate her rights under the FLSA and to seek damages for SBA's retaliation against her for asserting her rights under the FLSA.

Lucas files this partial motion for summary judgment as to SBA's willful violation of the FLSA for failure to pay her for compensable hours during the Furlough Period (Count One of the Amended Complaint) (ECF No. 70). Am. Compl. ¶¶ 37–43. There is no genuine dispute of material fact as to SBA's liability for Count One, and therefore, this Court should enter judgment on Count One in favor of Lucas as a matter of law.

## BACKGROUND

Lucas worked for SBA's Office of Women's Business Ownership ("OWBO") Office of Entrepreneurial Development ("OED") from 2017 to 2020. Plaintiff's Statement of Material Facts as to Which There is no Genuine Dispute, hereto, ¶¶ 1–3 ("SUMF"). Lucas was entitled to an hourly wage of approximately $48.17, or about

$100,203.00 annually. *Id.* ¶ 6. Lucas was eligible to earn overtime pay at a rate of approximately $72.26 per hour (time and a half). *Id.* ¶ 7.

During Lucas's employment with SBA, Bruce Purdy ("Purdy"), then the Deputy Director of OWBO, was Lucas's first line supervisor. *Id.* ¶ 4. Lucas's second line supervisor was Lori Gillen, the previous Deputy Associate Administrator of OED. *Id.* Allen Gutierrez, Associate Administrator of OED, was Lucas's third line supervisor (collectively, "the supervisors"). *Id.* The Chief Human Capital Officer at the time was Elias Hernandez. *Id.*

Prior to Lucas's time with SBA, she was declared to be a disabled veteran. *Id.* ¶ 5. In 2017, Lucas sought and was granted the ability to telework full-time. *Id.* She was placed on an "alternative work schedule" ("AWS") under which she worked nine hours for eight days, eight hours on one day (every other Friday), and thus had a day off every other week ("AWS day"). *Id.* This is otherwise called a Maxiflex 5-4/9 Flexible Work Schedule ("Maxiflex"). *Id.*; 5 U.S.C. § 6121(5).

Due to a lapse in funding, much of the United States government was shut down from January 20–22, 2018 ("Furlough Period"). *Id.* ¶ 8. Ahead of the Furlough Period, on January 19, 2018, the then-director of the Office of Management and Budget ("OMB") issued a memorandum for the heads of executive departments and agencies regarding a "potential lapse in appropriations" with an attached Frequently Asked Questions ("FAQ") document. *Id.* ¶ 9. The FAQ explained that if "an agency directs an employee to perform orderly shutdown activities on . . . an AWS day off, any hours performing orderly shutdown activities would count as hours in applying

2

applicable premium pay rules (e.g., for holiday premium pay or overtime pay")." *Id.* It further explained that if Congress provided pay for furlough hours, "those hours would count as hours of work in applying overtime rules[.]" *Id.*

On or about January 22, 2018, Lucas received an email which stated that she would be furloughed during the Furlough period "once you have completed an orderly shutdown of your work . . . ." *Id.* ¶ 10.

Because of the funding lapse, on January 22, 2018, SBA officials requested that Lucas perform "winding down duties" via telework (*i.e.*, "orderly shutdown"). *Id.* ¶ 11. January 22, 2018 was Lucas's AWS day when she otherwise was not supposed to be working. *Id.* ¶ 12. Nevertheless, on January 22, 2018, Lucas performed six hours of orderly shutdown activities as instructed, then was furloughed for the rest of the day (for three hours to make her full agreed nine-hour day pursuant to her Maxiflex schedule). *Id.* ¶¶ 11–13.

Also on January 22, 2018, the 115th Congress passed a Concurrent Resolution that required SBA to pay "[e]mployees furloughed as a result of any lapse in appropriations [that began] on or about January 20, 2018 . . . their standard rate of compensation, for the period of such lapse in appropriations, as soon as practicable after the lapse in appropriations ends." *Id.* ¶ 14. The Concurrent Resolution also provided for payment for work done "bringing about orderly termination of Government functions" by "ratify[ing] and approv[ing]" them. *Id.*

On January 24, 2018, the acting director of the Office of Personnel Management ("OPM") sent a governmentwide memorandum to chief human capital

officers. *Id.* ¶ 15. The memorandum explained that the Concurrent Resolution provided for "retroactive compensation for Federal employees covering the period of the lapse in appropriations." *Id.* It noted that the "purpose" of the legislation was to "make furloughed Federal employees whole by ensuring they receive the 'standard rate of compensation' for the entire period of the lapse in appropriations . . . ." *Id.* The memorandum attached guidance prepared by OPM in consultation with OMB. *Id.* The guidance explained that "All periods of time during which a furloughed employee would, but for the lapse in appropriations, have been in a pay status . . . must be considered 'hours of work' for pay administration purposes under the Fair Labor Standards Act[.]" *Id.* And it noted that "an AWS nonworkday cannot be changed after the pay period begins." *Id.*

On February 2, 2018, Hernandez sent an email to SBA employees with the subject Updated Post-Furlough Communication: Impact of Furlough on Timekeeping. *Id.* ¶ 16. In that email, Hernandez explained that employees such as Lucas who were in furlough status on January 22, 2018, on Maxiflex, scheduled to have their regular AWS day on January 22, 2018, and directed to conduct orderly shutdown activities, "must [be] grant[ed] overtime pay for hours worked on January 22, 2018, unless the employee request, and is approved to receive, Compensatory Time Off (CTO) in lieu of overtime pay." *Id.* (emphases in original exhibit). Lucas did not request and was not approved to receive CTO in lieu of overtime pay. *Id.* ¶ 17.

Despite the new law and crystal-clear guidance from OMB, OPM, and Hernandez, SBA initially sought to pay Lucas nothing for the work she did on January 22, 2018. *Id.* ¶ 18.

Lucas complained in response via email to SBA officials that she should be paid for all the time she spent working on January 22, 2018—six hours. *Id.* ¶ 19. Lucas did not at that time understand that she should have been paid for both the time she actually worked and the hours she was furloughed—nine hours—and at the overtime rate. *Id.*

SBA later changed its position that Lucas would not be paid at all, informing Lucas that Purdy had said "you will get pay for 4 hrs only[.]" *Id.* ¶ 20. On further inquiry about why she "had to put 4 hours for 1/22, when I worked 6 hours on my AWS," Purdy told Lucas: "During the furlough, employees were only allowed to work on shut down activities. In conferring with HR, four hours is what is considered ***reasonable*** for the shut down activities." *Id.*

As a result of the actions of Purdy and her other supervisors, Lucas was forced to record only four hours on her timesheet for January 22, 2018. *Id.* ¶ 21. SBA then paid Lucas for just four hours of work on January 22, 2018; it did so at the overtime rate. *Id.* SBA did not pay Lucas for any time worked in excess of four hours on January 22, 2018, nor did it pay her the three hours of furlough pay needed to bring her to a full nine hour work day. *Id.* Further, SBA paid every other employee in the OWBO, including Purdy, for orderly shutdown work they performed ***and*** for time they were furloughed on January 22, 2018. *Id.* ¶ 22.

SBA thus knew that the hours Lucas worked on January 22, 2018, exceeded the maximum allowable for Pay Period 2, 2018, based on her compressed schedule, and therefore, any such hours were required to be paid at the overtime rate. SBA therefore willfully failed to pay Lucas for five hours of work on January 22, 2018, to which she was entitled to be paid at the overtime rate (approximately $361.30).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "genuine issue" means a factual dispute can affect the substantive outcome of the case and is supported by admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Id.* at 247–48 (emphasis in original).

The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of its pleadings

6

and must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.*

## ARGUMENT

Lucas is entitled to summary judgment because there is no genuine dispute as to the material fact that Lucas was owed, and was willfully not paid by SBA, regular and overtime compensation in violation of the FLSA for the Furlough Period. 29 U.S.C. §§ 201 *et seq.*

### A. Lucas was an employee covered by the FLSA.

As a preliminary matter, the FLSA generally applies to employment within United States government agencies. 29 U.S.C. § 203; *Hilbert v. District of Columbia*, 23 F.3d 429, 430 (1994); *Doe v. United States*, 129 F.4th 1362, 1364 (Fed. Cir. 2025) ("In 1974, Congress amended the FLSA to apply to federal employees."); *Alaska v. EEOC*, 564 F.3d 1062, 1067 (9th Cir. 2009) ("A . . . section of the FLSA defines 'public agency' to include 'the government of a State or political subdivision thereof.'").

Lucas worked for SBA's Office of Women's Business Ownership ("OWBO") Office of Entrepreneurial Development ("OED") from 2017 to 2020. SUMF ¶ 3. The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . . ." 29 U.S.C. § 203(d). "[T]he term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e). At all times relevant to this lawsuit, SBA and its

7

supervisors exercised control over Lucas's schedule and the calculation and payment of Lucas's wages, in furtherance of SBA's interests. SUMF ¶ 1–4. SBA was therefore Lucas's employer as defined by the FLSA. Further, Lucas, as an employee of an executive agency, was an employee as contemplated by the FLSA. *Id*.

## B. Lucas's AWS/MaxiFlex schedule entitled her to overtime compensation for all hours in excess of eighty per pay period.

Lucas was approved to work remotely on an AWS schedule and worked nine-hour days for eight days and one eight-hour day (every other Friday) per biweekly pay period, and accordingly had one AWS day off every other week. *See* 5 U.S.C. § 6121(5); SUMF ¶ 5. Lucas worked pursuant to this Maxiflex schedule during the Furlough Period and her AWS day fell on January 22, 2018—the day of orderly shutdown. SUMF at ¶ 11–13.

Government employees with a "compressed schedule" fall within the reach of the FLSA. 5 U.S.C. § 6121(5); 5 U.S.C. § 6128(a)–(b) ("hours worked in excess of the compressed schedule shall be overtime hours and shall be paid for as provided by [29 U.S.C § 207]."). A "compressed schedule" is defined as "in the case of a full-time employee, an 80-hour biweekly basic work requirement which is scheduled for less than 10 workdays." *Id*. Lucas's Maxiflex schedule was a "compressed schedule because she was a full-time government employee, worked eighty hours each biweekly period, and was scheduled for less than ten workdays per period (working nine days per biweekly period, with one AWS day off). SUMF ¶ 1–3, 5–7.

"Overtime hours" for those with "compressed schedules" are defined as "any hours in excess of those specified hours which constitute the compressed schedule."

8

5 USCS § 6121(7).  This means that overtime hours for employees with compressed schedules are any hours in excess of eighty hours per biweekly period.  Lucas was therefore entitled to receive payment at the overtime rate for any work she performed in excess of eighty hours per biweekly period.  SUMF ¶¶ 5–7.

### C. Lucas worked overtime during the Furlough Period but was paid for only four out of nine overtime hours in violation of the FLSA.

Lucas, along with other SBA employees, received several documents that provided directions for employees working during the Furlough Period.  SUMF ¶¶ 9–10, 14–16.  These directives, along with directions given by her supervisor, Purdy, required Lucas to work on January 22, 2018—her AWS day on which she was typically not required work pursuant to her Maxiflex schedule—to conduct winding down activities, and then was furloughed for the remainder of the day.  *Id.* ¶¶ 9–13. This was a cancellation of Lucas's AWS day because she was made to work.  Because of this, all hours during which Lucas worked or was furloughed on January 22, 2018, were in excess of eighty hours for the biweekly pay period and were to be paid at the applicable overtime rate.  Lucas's cancelled AWS schedule did not affect her ability to receive furlough pay, and per the directive of Congress and guidance from OPM, all hours in excess of eighty hours were to paid at the applicable premium or overtime rates.  *Id.* ¶¶ 9–10, 14–16.

On January 22, 2018, Lucas worked for six hours to conduct winding down activities as directed by multiple official guidance documents and her supervisors, and therefore, was owed overtime compensation for the same.  *Id.* ¶ 13.  After she finished, Lucas was furloughed for the remainder of the day and so was entitled to

three hours of furlough pay pursuant to the Furlough Period directives. *Id.* ¶¶ 9–10, 14–16.  In total, Lucas was owed payment for eighty-nine compensable hours for work completed during the January 21, 2018 to February 3, 2018 pay period, at the appropriate overtime rate of $72.26 per hour (six hours of compensable work time and three hours of furlough pay, all of which are in excess of the eighty hour biweekly period pursuant to Lucas's Maxiflex "compressed schedule").

SBA, through Purdy and SBA's HR Department, determined that only four hours of work Lucas completed during the Furlough Period were "reasonable" and warranted pay. *Id.* ¶ 20.  Accordingly, Lucas was required to record only four hours of time on her timesheet. *Id.* ¶ 21.  This directly violated the requirements of the FLSA, which requires employers to pay overtime rates to employees for all compensable overtime work completed.  29 U.S.C. § 207; 5 U.S.C. § 6128(a)–(b).

The decision also directly contradicts the official directives issued regarding the Furlough Period and employee compensation.  SUMF ¶¶ 9–10, 14–16.  For example, OMB's FAQ document explained that if "an agency directs an employee to perform orderly shutdown activities on . . . an AWS day off, any hours performing orderly shutdown activities would count as hours in applying applicable premium pay rules (e.g., for holiday premium pay or overtime pay")." *Id.*  It further explained that if Congress provided pay for furlough hours, "***those hours would count as hours of work in applying overtime rules***[.]" *Id.* (emphasis added).

Congress did ultimately pass a resolution providing payment for furlough hours. *Id.* at ¶ 14.  The Concurrent Resolution required SBA to pay "[e]mployees

10

furloughed as a result of any lapse in appropriations [that began] on or about January 20, 2018 . . . their standard rate of compensation, for the period of such lapse in appropriations, as soon as practicable after the lapse in appropriations ends." *Id.* Therefore, no matter how many hours Lucas actually worked on January 22, 2018, she was entitled to be paid for a full day—just like everyone else. And that full day was, for Lucas, nine hours.

Furthermore, on January 24, 2018, the acting director of the Office of Personnel Management ("OPM") sent a governmentwide memorandum to chief human capital officers. *Id.* ¶ 15. The memorandum explained that the Concurrent Resolution provided for "retroactive compensation for Federal employees covering the period of the lapse in appropriations." *Id.* It also noted that the "purpose" of the legislation was to "make furloughed Federal employees whole by ensuring they receive the 'standard rate of compensation' for ***the entire period of the lapse*** in appropriations . . . ." *Id.* (emphasis added).

Additionally, on February 2, 2018, Elias Hernandez, the Chief Human Capital Officer at SBA at all times relevant to this lawsuit, sent an email to SBA employees with the subject *Updated Post-Furlough Communication: Impact of Furlough on Timekeeping. Id.* at ¶ 16. In that email Hernandez explained that employees such as Lucas who were in furlough status on January 22, 2018, on Maxiflex, scheduled to have their regular AWS day on January 22, 2018, and directed to conduct orderly shutdown activities, "must [be] grant[ed] overtime pay for hours worked on January 22, 2018, *unless* the employee requests, and receives approval for, Compensatory

11

Time Off (CTO) *in lieu of* overtime pay." *Id.* Additionally, this email recognized that "managers may have authorized an 'in lieu of' day off for employees" consistent with earlier issued guidance. For these employees, time was to be "coded as regular time and treated as a full work day." *Id.* Lucas should likewise have been paid for a full work day on January 22, 2018.

Lucas was therefore owed payment for nine hours of time on January 22, 2018 and at the overtime rate. Yet, SBA paid Lucas for only four of the nine hours to which she was owed. Lucas is therefore owed payment for five compensable hours at the overtime rate in the total amount of $361.30 (consisting of six hours of time worked and three hours of furlough time). *Id.* ¶¶ 13, 21. SBA indeed concedes that all compensable time relating to January 22, 2018, was to be paid at the overtime rate because SBA paid Lucas for four hours at the overtime rate. *Id.*

## D. SBA's failure to pay Lucas was a willful violation of the FLSA.

SBA's failure to compensate Lucas was willful. First, Lucas made several formal and informal complaints requesting that she receive her due compensation as required by the FLSA. *Id.* ¶ 19. Lucas thus made SBA fully aware of its FLSA violation, which it refuses to correct to this day. Second, while SBA refused to pay Lucas for five hours in violation of the FLSA, it also concurrently paid other employees, including Purdy, their full wages for the same period—including post-shutdown furlough hours on January 22, 2018 when work was no longer being performed. *Id.* ¶¶ 20–22. (These employees were on a normal work schedule and were compensated for a full eighty-hour two-week pay period, including for January

12

22, 2018).  Every one of these employees were paid eight hours—their full ordinary day—after completing orderly shutdown activities and not working after noon.  Yet Lucas, who worked on her AWS day off, was paid only five of the nine hours for her day.  *Id.*  This shows that the SBA knew that Lucas was not paid the full wages she was due and yet deliberately withheld them from her.

Lucas is also entitled to seek an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).  Therefore, the total amount to which Lucas is entitled under the FLSA pursuant to Count One is $722.60 plus prejudgment interest.  There is no genuine dispute of material fact as to SBA's obligation to pay these monies pursuant to the FLSA, and therefore, Lucas is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Lucas's motion for summary judgment should be granted.  SBA should be ordered to pay all compensation due to Lucas for hours worked and furloughed plus liquidated damages and prejudgment interest.

Respectfully submitted,

Dated: June 30, 2025

**/s/ David R. Dorey**
David R. Dorey
D.C. Bar No. 1015586
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway
Suite 200
Annapolis, MD  21401
Email: ddorey@liffwalsh.com
Telephone: (410) 266-9500
Facsimile: (410) 266-7699

*Counsel for Plaintiff Nia Shene' Lucas*

13